# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**DELMY NAVARRO NAJERA,**

    Petitioner,

v.

**JOEL GARCIA,** Field Office Director of Enforcement and Removal Operations, El Paso Field Office, Immigration and Customs Enforcement; **TODD LYONS**, Acting Director of U.S. Immigration and Customs Enforcement; **KRISTI NOEM**, Secretary, U.S. Department of Homeland Security; **U.S. DEPARTMENT OF HOMELAND SECURITY**; Pamela Bondi, U.S. Attorney General; **EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**; **DORA CASTRO**, Warden of the Otero County Processing Center.

    Respondents.

Case No. 2:25-cv-01173

## MEMORANDUM OPINION AND ORDER GRANTING WRIT OF HABEAS CORPUS

**THIS MATTER** comes before the Court upon Petitioner Delmy Navarro Najera's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("the Petition"), **Doc. 1**, the Court's Order for a Response to Petition, **Doc. 20**, and Petitioner's motion to enforce that Order. **Doc. 21**. Petitioner challenges the fact and duration of her post-removal order detention and seeks a writ of habeas corpus directing her immediate release from ICE custody at Otero County Processing Center in Chapparal, New Mexico ("Otero").

Pursuant to an order of this Court, Respondents were directed to respond to the allegations in the Petition by February 13, 2026. *See* **Doc. 20 at 3.** Counsel for Respondent Castro entered an appearance and notified the Court that she "takes no positions separate from the USA

Respondents" and that she "joins in the position(s) that the USA Respondents may take related to the Petition and/or other pleadings filed in this matter." **Doc. 19 at 1–2; Doc. 18**.

Receiving no response from United States respondents, on February 27, 2026, the Court issued a second order for a response to the Petition, warning that "[f]ailure to comply with this Order could result in the imposition of sanctions, including an order to show cause why Respondents should not be held in contempt of court." **Doc. 22**. Yet, the United States, as of the date of this Order, has not filed a response or otherwise appeared in this matter.[1] As a result, the Court must resolve the Petition on the limited record before it. While the absence of a response leaves certain factual questions unresolved, the Court cannot defer resolution indefinitely where a petitioner remains detained. Petitioner has now been detained for approximately ten months, without any apparent justification, and the liberty interests at stake require prompt judicial review.

Thus, on the unrebutted record, exercising its discretionary authority under 28 U.S.C. § 2243, the Court concludes that relief is merited in the form of Petitioner's release from custody. Accordingly, the Petition [**Doc. 1**] is GRANTED.

## BACKGROUND

Petitioner, a Guatemalan national, entered the United States without authorization in 2011 and was ordered removed. **Doc. 1 at 2 ¶¶ 2, 33, 34; Doc. 1-2 at 2, 10**. On May 2, 2012, a Washington State immigration court granted withholding of removal under INA section 241(b)(3), *codified at* 8 U.S.C. § 1231(b)(3), and two days later, Petitioner was released from detention under conditions of supervision. **Doc. 1-2 at 1–4**. For the next 13 years, Petitioner resided in Maryland. During that 13-year period, Petitioner complied with DHS's conditions of supervision, which

---

[1] The Court recognizes that the absence of a response may reflect broader resource constraints faced by government counsel. But that does not excuse the failure to, at the least, explain an inability to timely respond or seek an extension of a deadline imposed by the Court.

included, *inter alia*, (1) reporting for check-ins as ordered by the agency, (2) providing any information requested by the agency including information about her nationality, associations, and activities, (3) not traveling outside of the State of Maryland for more than 48 hours without notifying the agency, (4) informing the agency of any changes in her contact information or employment, and (5) not committing any crimes.  **Doc. 1 at 8 ¶ 35; Doc. 1-2 at 2–4**.  The record shows Petitioner reported for check-ins on approximately 13 occasions. **Doc. 1-2 at 3; Doc. 1 at 8–9 ¶ 36**.

At the most recent check-in on May 7, 2025, Petitioner was re-detained.  **Doc. 1 at 8 ¶ 36**.  The agency did not explain or provide documentation concerning its decision to detain Petitioner or revoke her release on supervision.  Instead, the Petition alleges, "[t]he only thing Petitioner received was a single-page document stating that ICE would attempt to deport her to Mexico, a country in which she has never resided and where she suffered horrific gender-based violence." *Id.* **at 9 ¶ 37**.

Petitioner was initially held for several days at a temporary detention facility in Baltimore, Maryland before being transferred to Otero.[2]  On August 5, 2025, according to the Petition, ICE "purportedly completed a custody determination review," resulting in Petitioner's continued detention.  **Doc. 1 at 10 ¶ 41**.  No findings from this review were provided to Petitioner or Petitioner's counsel.  *Id.*  Then, on or about August 31, 2025, after an interview evaluating Petitioner's fear of returning to Mexico, an asylum officer concluded that Petitioner was more likely than not to be tortured if removed to Mexico.  *Id.* **¶ 42**.  ICE then referred the matter to the

---

[2] Petitioner and another individual detained at the Maryland holding facility filed a class action and habeas proceeding in the United States District Court for the District of Maryland challenging the conditions of Petitioner's and other putative class members' confinement at the Maryland holding facility.  The Court recounted those proceedings in a prior Order.  **Doc. 14**.  For the present purposes, those proceedings are relevant only insofar as the District Court for the District of Maryland entered an order prohibiting Petitioner's release from the United States during the pendency of that proceeding, and that injunction appears to remain in effect.  *See* **Doc. 21-1 at 4 ¶ 19**.

immigration court for "withholding only proceedings."[3] *Id.* A DHS form dated September 3, 3025 and titled, "Notice of Referral to Immigration Judge," contains a checked box stating, *inter alia*, that "[Petitioner] has been ordered removed pursuant to section 238(b) of the [Immigration and Nationality] Act [(INA)], or the DHS has reinstated a prior exclusion, deportation, or removal order of the above-named alien pursuant to section 241(a)(5) of the Act."[4] **Doc. 1-2 at 8**.

On October 21, 2025, the Otero Immigration Court conducted a hearing on Petitioner's applications for withholding of removal to Mexico under 8 U.S.C. § 1231(b)(3) and protection under the Convention Against Torture. The immigration court denied both forms of relief. Petitioner appealed this decision on November 19, 2025. **Doc. 1 at 10 ¶ 43**.

In a letter dated November 13, 2025, ICE issued a "Decision to Continue Detention." **Doc. 1-2**. The letter states, in pertinent part,

> This decision was based on a review of your file record, personal interview and consideration of any information you submitted to ICE reviewing officials and upon review of the factors for consideration set forth at 8 C.F.R. § 241.4(e), (f), and (g).
>
> [. . .]
>
> You were previously removed twice from the United States, subsequent to a removal order issued by an Immigration Judge. Your order was reinstated, and you claimed fear of returning to Guatemala. An Asylum Officer determined you had established reasonable fear, and your case was referred to Immigration Judge (IJ). On May 2, 2012, an IJ in Tacoma, WA, granted you withholding of removal (Guatemala), pursuant to Section 241(b)(3) of the INA. ERO is seeking third country alternative removal to Mexico. You claimed reasonable fear to Mexico and an IJ denied the withholding only to Mexico on October 21, 2025. You reserved your right to appeal and are still within the appeal period.

---

[3] Petitioner describes this procedural step as a deviation from ICE's ordinary practice of filing a motion to reopen in similar circumstances. **Doc. 1 at 10 ¶ 42**.
[4] INA section 238(b) concerns the removal of certain non-lawful permanent residents convicted of aggravated felonies. 8 U.S.C. § 1228(b). Given that Petitioner has no criminal history unrelated to her immigration history, that section does not apply here. INA section 241(a)(5) concerns the reinstatement of removal orders against noncitizens who reenter the United States after having been removed or departed voluntarily. 8 U.S.C. § 1231(a)(5). This section similarly does not apply under the circumstances, given that Petitioner was not removed and instead has resided in the United States since her prior entry in November 2011. **Doc. 1 at 8 ¶ 33**.

4

> Due to your pending case, ICE is unable to move forward with your removal from the United States at this time. Pending an appeal or ruling on your case, you are to remain in ICE custody, and as [sic] ICE is unable to conclude that the factors set forth in 8 C.F.R. § 241.4(e) have been satisfied.
>
> [ . . . ]

*Id.* **at 10**.

Petitioner has no criminal history apart from immigration-related offenses. **Doc. 1 at 15 ¶ 57**. The record demonstrates that she has significant community and family ties to Maryland, where she has lived for more than a decade. Petitioner is the mother of a four-year-old United States citizen daughter diagnosed with autism and a son who is a lawful permanent resident. She has also raised her lawful permanent resident nephew there, and prior to her re-detention, had begun the process of assuming legal guardianship of a teenage girl abandoned by her parents. *Id.* **at 2 ¶ 3; 12 ¶ 47**. The record further reflects that Petitioner is cooperating with the United States Attorney's Office in a criminal investigation and is seeking S nonimmigrant status based on that cooperation. *Id.* **at 11 ¶ 44**.

Petitioner asserts that her detention violates 8 U.S.C. § 1231, which permits detention only during the "removal period" — defined as the 90 days following the day an order of removal becomes administratively final — and for the period beyond that only insofar as it is necessary to facilitate removal and there is "a significant likelihood of removal in the reasonably foreseeable future." *Id.* **at 14–15**. Petitioner also alleges that she was deprived of process required by law when DHS failed to abide by regulations concerning revocation of conditional release. **Doc. 1 at 7, ¶¶ 30–31; 12–14**. Petitioner seeks her immediate release from custody.

## DISCUSSION

**I.      Jurisdiction**

District courts are authorized to entertain petitions for habeas corpus "within their respective

jurisdictions." 28 U.S.C. § 2241(a). Petitioner is detained within New Mexico and names Respondent Castro, the warden of Otero County Processing Center, where she is detained. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) (holding that, in *Ex Parte Endo*, 542 U.S. 426, 441 (2004), an immigration-related habeas case, the district court "acquired jurisdiction . . . because Endo properly named her immediate custodian and filed in the district of confinement."). Because Petitioner is confined within this district and has named her immediate custodian, this Court properly exercises habeas jurisdiction.

Pursuant to section 2241, district courts may entertain habeas petitions challenging the lawfulness of detention under the federal immigration laws and the United States Constitution. 28 U.S.C. § 2241(c)(3); *Rasul v. Bush*, 542 U.S. 466, 483 (2004). Petitioner challenges her detention under the Immigration and Nationality Act and its implementing regulations. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 2241.

## II.     There is No Apparent Statutory Basis for Detention

Given their lack of response, Respondents identify no statutory basis for detention. The Court therefore evaluates whether the existing record supplies any apparent detention authority. Petitioner frames this case as concerning the provisions of 8 U.S.C. § 1231, the detention framework applicable to noncitizens[5] who have been ordered removed. **Doc. 1 at 6 ¶¶ 29–30**. Based on the limited record before the Court, it appears the United States views the case the same way. In its Decision to Continue Detention, ICE states that its decision is based on 8 C.F.R. § 241.4(e), (f), and (g), regulations which govern the detention and release of individuals held "beyond the removal period." **Doc. 1-2 at 10**; 8 C.F.R. § 241.4 (title). Immigration detention authority arises, if at all, under 8 U.S.C. §§ 1225, 1226, and 1231. *See, e.g.*, *Jimenez Chacon v.*

---

[5] This Memorandum Opinion and Order "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

*Lyons*, --- F. Supp. 3d ----, 2025 WL 3496702, at *5 (D.N.M. Dec. 4, 2025) ("A removable noncitizen may be detained during his removal proceedings and after he receives an order of removal that becomes final") (citing 8 U.S.C. §§ 1225, 1226, 1231)). Because Petitioner is neither an arriving noncitizen under § 1225 nor awaiting a determination of removability under § 1226, her detention, if authorized at all, must arise under § 1231.[6]

Section 1231 mandates detention for a 90-day "removal period." 8 U.S.C. § 1231(a)(1)(A); *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001). The "removal period" commences upon one of three possible days: i) the date on which a removal order becomes administratively final; (ii) the date on which judicial review with a stay of the removal order concludes; and (iii) the date on which a noncitizen ordered removed is released from nonimmigration detention. § 1231(a)(1)(B). Beyond the removal period, § 1231 permits detention for "a period reasonably necessary" to effectuate removal. *Zadvydas*, 533 U.S. at 689. Six months of post-removal order detention is "presumptively reasonable." *Id.* at 701. If, upon six months of post-removal detention, the detainee "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence to rebut that showing." *Id.* "[F]or detention to remain reasonable, as the period of . . . postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s]." *Id.* "This 6-month presumption . . . does not mean that every [noncitizen] not removed must be released after six months." Rather, a "[noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

First, it is necessary to ascertain the relevant removal period. The record does not establish

---

[6] 8 U.S.C. § 1225 governs the detention of arriving noncitizens applying for admission and 8 U.S.C. § 1226 governs the apprehension and detention of noncitizens pending removal proceedings.

the precise date on which Petitioner's 2012 removal order became administratively final. However, DHS's decision to release Petitioner under conditions of supervision indicates that any removal period associated with that order had already lapsed.

The present record does not demonstrate that a new removal period has commenced. Although certain agency records allude to a reinstated removal order, **Doc. 1-2 at 8, 10**, the record before the Court contains no reinstatement order or other competent evidence demonstrating that a new or reinstated removal order is presently in effect. To the extent there is a conceivable argument that the re-detention or revocation of supervision of a removed noncitizen triggers a new removal period, that argument is not supported by statute, which defines the removal period to commence only upon the occurrence of three specified dates. § 1231(a)(1)(B). In other words, revocation of supervision alters custody status but does not constitute one of the statutory events that initiates a new removal period under § 1231(a)(1)(B). Therefore, the only relevant removal period on this record — beginning in or around 2012 — has long since concluded, and Petitioner's detention occurs well beyond that period.

As the Supreme Court explained in *Zadvydas*, the habeas court's task is to "ask whether the detention in question exceeds a period reasonably necessary to secure removal." 533 U.S. at 699. Reasonableness is measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700. The existing record does not demonstrate that Petitioner's removal is reasonably foreseeable. Therefore, the Court must conclude that Petitioner's continued detention is unreasonable and not statutorily permissible.

Certain evidence, construed in Respondents' favor, reflects a renewed intent to remove

Petitioner to Mexico. For example, the checked box on the September 3, referral to immigration court indicates Petitioner may be subject to a reinstated removal order, **Doc. 1-2 at 8**, and the Decision to Continue Detention letter states "ERO is seeking third country alternative removal to Mexico." *Id.* **at 10**. However, as stated earlier, the existing record contains no reinstated removal order or other documentation demonstrating commencement of a new removal period, nor does it indicate when such a reinstated removal order—if any—was issued.

Apart from these passing references, however, the record overwhelmingly demonstrates that removal is not reasonably foreseeable. After an initial detention period, Petitioner was released under DHS supervision, a status she held for approximately 13 years. Throughout her release, she reported to the agency on no fewer than 13 occasions and the record does not show that she received any indication that removal was imminent at any point.

In fact, Petitioner presents affirmative evidence that removal will not occur in the reasonably foreseeable future as a matter of agency position. Petitioner has sought review of the denial of her application for withholding of removal to Mexico, **Doc. 1 at 10 ¶ 43**, and the record reflects that removal cannot proceed while those proceedings remain pending. Indeed, ICE states—in its one-page decision explaining its decision to continue detention: **"Due to your pending case, ICE is unable to move forward with your removal from the United States at this time."** **Doc. 1-2 at 10 (emphasis added)**. Given that the Government itself has acknowledged that removal cannot be executed at present and for an indefinite appellate review period thereafter, detention no longer serves the purpose contemplated by § 1231—effectuation of removal in the reasonably near future.

Although DHS's acknowledgement of the impossibility of removal during the appeal period is alone compelling evidence that removal will not be executed in the reasonably near

9

future, the record contains further evidence supporting the United States' intent to continue to permit Petitioner to remain in the United States. The United States has, for one, taken efforts to assist Petitioner in pursuing lawful status based on her cooperation in a criminal investigation. The record does not indicate that that investigation or those immigration efforts have concluded. Further, the fact that Petitioner has been detained now for nearly 10 months undercuts any likelihood of removal in the foreseeable future. *Zadvydas*, 533 U.S. at 701 ("[A]s the period of . . . postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s]."). Finally, insofar as the present record demonstrates, Respondents have not determined whether Mexico is willing to accept Petitioner nor have they indicated that Petitioner's removal to a country other than Mexico is being pursued. *See* **Doc. 1. at 15 ¶ 59**. The record therefore overwhelmingly supports that Petitioner's removal cannot be secured at a reasonably foreseeable time.

The Court notes that federal regulation permits ICE to "revoke [a noncitizen]'s release . . . and return the noncitizen to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).[7] However, regulation cannot expand upon the authority conferred by statute. *See Grupo Indus. Camesa v. United States*, 85 F.3d 1577, 1579 (Fed. Cir. 1996) ("It is axiomatic that a regulation cannot expand the scope of the statute under which it is promulgated."). Nor can it stand on its own to justify unreasonable or prolonged detention. Even though revocation permits DHS to return a noncitizen to custody, continued detention must still satisfy the reasonableness limitation *Zadvydas* imposes on § 1231. Further, even if ICE could properly invoke § 241.13(i) here, the record does not demonstrate changed circumstances suggesting a

---

[7] Section 241.13 also permits revocation of release in the event of violation of the conditions of release. § 241.13(i)(1). Petitioner has committed no such violation here.

significant likelihood of removal in the reasonably foreseeable future.

Accordingly, because Petitioner is detained beyond the removal period and the record — including the Government's affirmative representations — demonstrates removal will not be secured in the reasonably foreseeable future, detention is not authorized under § 1231.

### III.     Release is the Appropriate Remedy

Respondents have not presented any valid authority for Petitioner's detention and none appears on the existing record. Therefore, release is the appropriate remedy. *See Diallo v. Baltazar*, No. 1:25-cv-3548, 2026 WL 237296, at *3 (D. Colo. Jan. 29, 2026) ("Because Respondents have offered no legal basis for [the petitioner's] detention, the Court concludes [the petitioner] is entitled to immediate release.").

It is, accordingly, **ORDERED** that Respondents **SHALL** release Petitioner from custody immediately. Petitioner's counsel shall promptly notify the Court once Petitioner has been released and, if appropriate, file a motion for voluntary dismissal.

It is FURTHER ORDERED that the foregoing order is **STAYED** for **five (5) days** during which Respondents shall have the opportunity to object to this Order. Absent any objection, this Order will automatically go into effect in five days.

The Clerk of Court is DIRECTED to serve a copy of this Order on the United States Attorney's Office pursuant to Administrative Order 26-MC-00004-03.

SO ORDERED.

/s/_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE